**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GLOCK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK J. GRIFFIN, in his official capacity as Chief State's Attorney; MARGARET E. KELLEY, in her official capacity as State's Attorney for the Judicial District of Ansonia-Milford; JOSEPH T. CORRADINO, in his official capacity as State's Attorney for the Judicial District of Bridgeport; STACEY MIRANDA, in her official capacity as State's Attorney for the Judicial District of Danbury; SHARMESE L. WALCOTT, in her official capacity as State's Attorney for the Judicial District of Hartford; DAVID R. SHANNON, in his official capacity as State's Attorney for the Judicial District of Litchfield; MICHAEL A. GAILOR, in his official capacity as State's Attorney for the Judicial District of Middlesex; CHRISTIAN M. WATSON, in his official capacity as State's Attorney for the Judicial District of New Britain; JOHN P. DOYLE, JR., in his official capacity as State's Attorney for the Judicial District of New Haven; PAUL J. NARDUCCI, in his official capacity as State's Attorney for the Judicial District of New London; DAVID R. APPLEGATE, in his official capacity as State's Attorney for the Judicial District of Stamford-Norwalk; CRAIG P. NOWAK, in his official capacity as State's Attorney for the Judicial District of Tolland; MAUREEN PLATT, in her official capacity as State's Attorney for the Judicial District of Waterbury; JOHN F. FAHEY, in his official capacity as State's Attorney for the Judicial District of Windham; and RONNELL A. HIGGINS, in his official capacity as Commissioner of the Connecticut Department of Emergency Services and Public Protection,<br><br>Defendants. | : | Civil Action No.: ____________<br><br><br><br>SEPTEMBER 21, 2026 |

**<u>COMPLAINT</u>**

Glock, Inc., by and through its attorneys, Renzulli Law Firm, LLP, brings this civil action against Defendants in their official capacities for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Glock, Inc. seeks a declaration that the pistols that it currently sells to the commercial market do not fall within the definition of "convertible pistols" for purposes of Conn. Gen. Stat. § 53-202(a)(4). In the alternative, Glock, Inc. seeks a declaration that the ban on the importation, advertisement, and sale of "convertible pistols" enacted pursuant to Substitute House Bill No. 5043, Public Law 26-14 ("HB 5043") is unconstitutional on the basis that it is void for vagueness in violation of the due process clause of the Fourteenth Amendment, violates the right to keep and bear arms protected by the Second and Fourteenth Amendments, violates the right to freedom of speech protected by the First and Fourteenth Amendments, and an injunction prohibiting Defendants from enforcing it.

## PARTIES

1. Plaintiff **Glock, Inc.** is the United States manufacturer of GLOCK pistols as well as the exclusive importer of GLOCK pistols manufactured in Austria by Glock Ges.m.b.H. All GLOCK pistols use a cruciform trigger bar, a cross-shaped internal metal component in the trigger bar mechanism that links the trigger to the firing pin.

2. As of August 2026, there are 659 federal firearms licensees in Connecticut, all of whom are currently able to purchase GLOCK pistols and import them into the state for purposes of resale. Thirty-five of the federally licensed firearms dealers in Connecticut participate in Glock, Inc.'s Glock Stocking Dealer program and have contracts with Glock, Inc. that require them to purchase and stock GLOCK pistols for resale to consumers.

3. Defendant **Patrick J. Griffin** ("Griffin"), is Connecticut's Chief State's Attorney and the administrative head of the Division of Criminal Justice, and is sued in his official capacity.

As Chief State's Attorney, Defendant Griffin is "in charge of the investigation and prosecution of all criminal matters." Conn. Const., art. IV, § 27. As Chief State's Attorney, Defendant Griffin is required to "take all steps necessary and proper to prosecute all crimes and offenses against the laws of the state[.]" Conn. Gen. Stat. § 51-277(b). This authority extends to prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Griffin is a resident of Connecticut, and his principal place of business is in Rocky Hill. At all relevant times, Defendant Griffin, as well as those subject to his supervision, direction, or control, act under color of state law.

4. Defendant **Margaret E. Kelley** ("Kelly") is the State's Attorney for the Ansonia-Milford Judicial District and is sued in her official capacity. As State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Kelley is a resident of Connecticut, and her principal place of business is in Milford. At all relevant times, Defendant Kelley, as well as those subject to her supervision, direction, or control, act under color of state law.

5. Defendant **David R. Applegate** ("Applegate") is the State's Attorney for the Danbury Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Applegate is a resident of Connecticut, and his

principal place of business is in Danbury. At all relevant times, Defendant Applegate, as well as those subject to his supervision, direction, or control, act under color of state law.

6. Defendant **Joseph T. Corradino** ("Corradino"), is the State's Attorney for the Bridgeport Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Corradino is a resident of Connecticut, and his principal place of business is in Bridgeport. At all relevant times, Defendant Corradino, as well as those subject to his supervision, direction, or control, act under color of state law.

7. Defendant **Sharmese L. Walcott** ("Walcott") is the State's Attorney for the Hartford Judicial District and is sued in her official capacity. As State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Walcott is a resident of Connecticut, and her principal place of business is in Hartford. At all relevant times, Defendant Walcott, as well as those subject to her supervision, direction, or control, act under color of state law.

8. Defendant **David R. Shannon** ("Shannon") is the State's Attorney for the Litchfield Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate

Connecticut's "convertible pistol" ban. Defendant Shannon is a resident of Connecticut, and his principal place of business is in Torrington. At all relevant times, Defendant Shannon, as well as those subject to his supervision, direction, or control, act under color of state law.

9. Defendant **Michael A. Gailor** ("Gailor") is the State's Attorney for the Middlesex Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Gailor is a resident of Connecticut, and his principal place of business is in Middletown. At all relevant times, Defendant Gailor, as well as those subject to his supervision, direction, or control, act under color of state law.

10. Defendant **Christian Watson** ("Watson") is the State's Attorney for the New Britain Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Watson is a resident of Connecticut, and his principal place of business is in New Britain. At all relevant times, Defendant Watson, as well as those subject to his supervision, direction, or control, act under color of state law.

11. Defendant **John P. Doyle, Jr.** ("Doyle") is the State's Attorney for the New Haven Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-

286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Doyle is a resident of Connecticut, and his principal place of business is in New Haven. At all relevant times, Defendant Doyle, as well as those subject to his supervision, direction, or control, act under color of state law.

12. Defendant **Paul J. Narducci** ("Narducci"), is the State's Attorney for the New London Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Narducci is a resident of Connecticut, and his principal place of business is in New London. At all relevant times, Defendant Narducci, as well as those subject to his supervision, direction, or control, act under color of state law.

13. Defendant **Paul J. Ferencek** ("Ferencek") is the State's Attorney for the Stamford-Norwalk Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Ferencek is a resident of Connecticut, and his principal place of business is in Stamford. At all relevant times, Defendant Ferencek, as well as those subject to his supervision, direction, or control, act under color of state law.

14. Defendant **Craig P. Nowak** ("Nowak") is the State's Attorney for the Tolland Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of

all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Nowak is a resident of Connecticut, and his principal place of business is in Rockville. At all relevant times, Defendant Nowak, as well as those subject to his supervision, direction, or control, act under color of state law.

15. Defendant **Maureen Platt** ("Platt") is the State's Attorney for the Waterbury Judicial District and is sued in her official capacity. As State's Attorney, she is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). Her responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Platt is a resident of Connecticut, and her principal place of business is in Waterbury. At all relevant times, Defendant Platt, as well as those subject to her supervision, direction, or control, act under color of state law.

16. Defendant **John F. Fahey** ("Fahey") is the State's Attorney for the Windham Judicial District and is sued in his official capacity. As State's Attorney, he is required to "diligently inquire after and make appropriate presentment and complaint to the Superior Court of all crimes and other criminal matters within the jurisdiction of the court[.]" Conn. Gen. Stat. § 51-286a(a). His responsibilities and authority include prosecuting individuals who violate Connecticut's "convertible pistol" ban. Defendant Fahey is a resident of Connecticut, and his principal place of business is in Danielson. At all relevant times, Defendant Fahey, as well as those subject to his supervision, direction, or control, act under color of state law.

17. Defendant **Ronnell A. Higgins** ("Higgins") is the Commissioner of Connecticut's Department of Emergency Services and Public Protection ("DESPP"), and he is sued in his official

capacity. In his role as the Commissioner of the DESPP, Higgins oversees the Connecticut State Police, which is responsible for the "investigation, detection and prosecution of any criminal matter or alleged violation of law." Conn. Gen. Stat. § 29-7. His responsibilities and authority include investigating and prosecuting alleged violations of Connecticut's "convertible pistol" ban. Defendant Higgins is a resident of Connecticut, and his principal place of business is in Middletown. At all relevant times, Defendant Higgins, as well as those subject to his supervision, direction, or control, act under color of state law.

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because Glock, Inc. is seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and, in the alternative, alleges that the "convertible pistol" law is unconstitutional and seeks injunctive relief pursuant to 42 U.S.C. § 1983.

19. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants reside here as a matter of law, and because a substantial part of the events or omissions giving rise to the claim occurred here.

## BACKGROUND

20. Gaston Glock invented and developed the Pistole 80 ("P80") for Austrian Ministry of Defense between 1980 and 1982. The Austrian Armed Forces adopted the GLOCK P80 pistol, which incorporates the Safe Action® System, in 1982. When Norway commissioned Glock Ges.m.b.H. to supply its armed forces with P80 pistols in 1984, a renaming of the pistol took place and the P80 became known as the GLOCK 17. The Safe Action System was a revolutionary design that provides a consistent trigger pull from the first to the last round and includes three automatic independently operating mechanical safeties that are built into the fire control system of the pistol.

This safe, simple, and fast system allows the user to fully concentrate on shooting without having any additional actions to disengage and reengage safeties and renders the pistol safe if it is dropped.

21. The Safe Action System is an automatic safety system consisting of three passive, independently operating, mechanical safeties. All three safeties disengage sequentially as the trigger is pulled and automatically re-engage when the trigger is released:




22. The trigger safety is the first safety in the firing sequence. It is incorporated into the trigger in the form of a lever and when it is engaged, blocks the trigger from moving rearward. To fire the pistol, the trigger safety and the trigger itself must be deliberately depressed at the same time. If the trigger safety is not depressed, the trigger will not move rearwards and allow the pistol to fire. The trigger safety is designed to prevent the pistol from firing if it is dropped, or if the trigger is subjected to any pressure that is not a direct pull.

23. The second safety, the firing pin safety, mechanically blocks the firing pin from moving forward in the ready-to-fire condition. As the trigger is pulled rearward, the trigger bar

pushes the firing pin safety up and frees the firing pin channel. If the user decides not to fire and releases the trigger, the firing pin safety automatically reengages.

24. The final safety involves the cruciform trigger bar, which rests on the safety ramp within the trigger mechanism housing. The cruciform trigger bar engages the rear portion of the firing pin and prevents the firing pin from moving forward. As the trigger is pulled rearward the cruciform trigger bar lowers down the safety ramp and allows the release of the firing pin. After firing, the cruciform trigger bar moves upward and re-engages the firing pin. As the trigger is released, all safeties automatically reengage.




25. Gaston Glock understood that reliability resides in simplicity, and therefore, he designed the Model 17 pistol with as few parts as possible, minimizing its complexity. GLOCK pistols are made from an average of only thirty-four parts, which is significantly fewer than any other pistol on the market that is not based on the GLOCK pistol design, and makes it more durable, reliable, and easier to maintain.

26. Because of the superior design of the GLOCK pistols, they quickly became the most popular pistols in the United States and are currently used by more than 65% of law

enforcement agencies in the United States, including a substantial majority of federal law enforcement agencies. GLOCK pistols are particularly favored by law enforcement in Connecticut, where approximately 85% of law enforcement agencies issue GLOCK pistols to their officers, including (among others) the Connecticut State Police, the Connecticut Division of Criminal Justice, the Danbury Police Department, the Greenwich Police Department, the Hartford Police Department, the New Britain Police Department, the New Haven Police Department, the Norwalk Police Department and the West Hartford Police Department. In addition to the law enforcement agencies that issue GLOCK pistols to their officers, numerous law enforcement officers work for agencies that authorize them to purchase their own GLOCK pistols for use on duty.

27. GLOCK pistols also became by far the most popular handgun for civilian consumers, with more GLOCK pistols having been sold than any other handgun made. Glock, Inc. sells hundreds of thousands of GLOCK pistols every year.

28. As the U.S. Supreme Court has noted, "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun[.]" *Staples v. U.S.*, 511 U.S. 600, 615 (1994); *see also id.* at 612 n.6 (noting that "readily convertible semiautomatics" have never been banned). Like other semi-automatic firearms, certain GLOCK pistols can be illegally converted to a fully automatic machinegun through the installation of a machinegun conversion device ("MCD").

29. A Venezuelan individual entirely unrelated to Glock sought to patent an MCD that he designed for use in GLOCK pistols in the 1990s. That third-party's MCD design replaces the cover plate of the standard width GLOCK pistols, and it was publicly disclosed by the U.S. Patent and Trademark Office ("USPTO") in a U.S. patent application in 1996. The USPTO issued a

patent on that MCD design in 1998. The 1996 patent application and the 1998 patent have and continue to be publicly available in the USTPO's public patent database. Beginning in 2020, MCDs based on this design became increasingly popular, with the majority of them being illegally imported from China, or made using 3D printers.

30. Due to differences in the design from the standard frame width GLOCK pistols, the later developed Slimline series of GLOCK pistols (Models 42, 43, 43X, and 48) are not susceptible to the installation of an MCD. The smaller width of Slimline series of GLOCK pistols, including the short distance between the rear frame rails and the size of the slide cover plate, inhibit the installation of an MCD.

31. MCDs are banned as machineguns pursuant to both federal law (18 U.S.C. §§ 921(24) & 922(0), 26 U.S.C. § 5845(b) (defining a machinegun as including "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun")) and Connecticut law (Conn. Gen. Stat. § 53-202(a)(1)(B) (defining a machinegun as including "any part or combination of parts designed for use in converting a weapon into a machine gun")).

32. In response to the increasing popularity of MCDs, beginning in 2022, Glock Ges.m.b.H. and Glock Technology GmbH, the Austrian companies responsible for the design and development of GLOCK pistols, began investigating potential ways in which the design of the standard width GLOCK pistols could be modified to inhibit the installation of an MCD, without adversely affecting the safety, reliability and durability inherent in the cruciform trigger bar design and the Safe Action System.

33. Glock Ges.m.b.H. and Glock Technology GmbH eventually developed a "triple block" design that included changes to both the frame and slide designed to inhibit the installation of an MCD.

34. The "triple block" consists of: (1) rear frame rails that are reinforced with a hardened steel bracket; (2) steel domes in the slides that protrude into the space where the leg of an MCD could interact with the cruciform trigger bar; and (3) a modified slide cover plate design.

35. The "triple block" was incorporated into certain popular Gen5 GLOCK pistols (the Model 17, 19, 19X, 20, 21, 23, 26, 44, and 45), which were then designated as V Series versions of those pistol models. The same "triple block" used in the V Series was incorporated into the most recent Gen6 GLOCK pistols.

36. Based on the "triple block" included within them, the V Series and Gen6 GLOCK pistols are not readily susceptible to the installation of known MCDs.

37. Glock, Inc. submitted an exemplar Model 19 Gen6 GLOCK pistol to the Bureau of Alcohol Tobacco, Firearms, and Explosives ("ATF") Firearms Technology Industry Services Branch ("FTISB"), which tested it and compared it against a Model 19 Gen5 GLOCK pistol to determine whether the "triple block" would prevent the installation of known MCDs.

38. In a report dated July 8, 2025, Rondal Bleigh, Acting Chief of the ATF's FTISB concluded that the "triple block" incorporated into the V Series and Gen6 GLOCK pistols prevented the installation and function of all tested MCDs. The report specifically noted that the internal hardened steel bracket is encased in the polymer frame, has been extended to prevent an MCD from being installed, and is not easily modified or altered.

39. Since December 1, 2025, with the exception of Slimline pistols, Glock, Inc. discontinued the manufacture, importation and sale of new Gen5 and earlier model pistols to the civilian market and replaced them with V Series and Gen6 pistol models.

40. Glock, Inc. still manufactures and/or imports certain Gen3, Gen4, and Gen5 pistol models, but they are sold exclusively to law enforcement, government agencies and for export, not to the U.S. civilian market.

41. Before 2026, no semi-automatic firearms have been banned simply because they are capable of being illegally converted to a machinegun through the installation of an MCD.

42. HB 5043 was enacted into law on May 26, 2026 and goes into effect on October 1, 2026. It enacts a new definition of a "convertible pistol" in Connecticut law.

43. A "convertible pistol" is defined as "any semiautomatic pistol with a cruciform trigger bar that can be readily altered by hand or with a common household tool so that the pistol can be readily converted into a machine gun by the installation or attachment of a pistol converter[.]" Conn. Gen. Stat. § 53-202(a)(4).

44. A "cruciform trigger bar" is defined as a "component in a semiautomatic pistol that serves as a linkage between the trigger and firing pin and has its sear incorporated in a cross-shaped surface." Conn. Gen. Stat. § 53-206g(c)(5).

45. A "common household tool" is defined as including a "knife, screwdriver, wrench, hacksaw, crowbar, electric drill, rotary tool, hammer, chisel, file or pliers." Conn. Gen. Stat. § 53-206g(c)(6).

46. A "pistol converter" is defined as "any device or instrument that, when installed in or attached to the rear of the slide of a semiautomatic pistol, interferes with the trigger mechanism,

thereby enabling the pistol to discharge a number of shots or bullets rapidly or automatically with one continuous pull of the trigger." Conn. Gen. Stat. § 53-206g(c)(3).

47. The terms "readily altered" and "readily converted" as used in Conn. Gen. Stat. § 53-202(a)(4) are not defined.

48. There is an exception excluding from the definition of a "convertible pistol" "any semiautomatic pistol with a cruciform trigger bar that has a tab or other piece of material molded to the pistol's frame that shields the cruciform trigger bar from interference by a pistol converter, unless the tab or other piece of material can be readily removed from the pistol's frame." Conn. Gen. Stat. § 53-202(a)(4)(B).

49. The term "readily removed," as used in Conn. Gen. Stat. § 53-202(a)(4)(B), is not defined.

50. HB 5043 provides that any "individual or firm, partnership, corporation, limited liability company, association or other similar entity that knowingly imports into this state or knowingly advertises, sells, offers or exposes for sale any convertible pistol, as defined in section 53-202 of the general statutes, as amended by this act, that was manufactured on or after October 1, 2026, shall be guilty of a class D felony." Public Law 26-41 § 3. This provision has not yet been codified in the Connecticut General Statutes.

51. There are no exceptions to the ban on the importation and sale of "convertible pistols" manufactured on or after October 1, 2026 for sale to law enforcement officers, or even to law enforcement agencies.

52. A class D felony is punishable by up to five years imprisonment and a fine of up to $5,000. Conn. Gen. Stat. §§ 53a-35a(8), 53a-41(4).

53. Counsel for Glock, Inc. wrote to the Connecticut Office of the Attorney General on July 3, 2026, to discuss HB 5043 and seek confirmation that the Slimline, V Series, and Gen6 GLOCK pistols do not fall within the definition of a "convertible pistol" pursuant to Conn. Gen. Stat. § 53-202(a)(4).

54. Outside counsel for Glock, Inc. and representatives of Glock, Inc. met with seven representatives of the Connecticut Office of the Attorney General, and two representatives of the Connecticut State Police Special Licensing and Firearms Unit ("SLFU"), on August 27, 2026. During this meeting, they explained why the Slimline, V Series, and Gen6 GLOCK pistols do not fall within the definition of a "convertible pistol" using exemplars of the above models and a Gen5 GLOCK pistol, as demonstratives.

55. During the August 27, 2026 meeting, representatives from the Connecticut State Police SLFU advised that federally licensed firearms dealers in Connecticut have been calling to ask whether the importation and sale of new GLOCK pistols will be banned effective October 1, 2026, but that they do not know the answer.

56. At the conclusion of the meeting, Glock, Inc. requested the State's position regarding whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible pistols," as defined by Conn. Gen. Stat. § 53-202(a)(4), such that the importation, advertisement, and sale of newly manufactured pistols of such models will be banned effective October 1, 2026. The representatives of the Connecticut Office of the Attorney General refused to respond and later advised that criminal law enforcement "is simply not a part of . . . the duties of [the] [O]ffice [of Attorney General]." Further, the Office of Attorney General stated that it "cannot answer legal questions from private parties pursuant to our legal authority" and advised that such issue should be addressed to the Chief State's Attorney's Office. The Office of Attorney

General also agreed, as "a courtesy," "to convey the information [Glock, Inc.] provided … to the extent that information is sought by the folks responsible for the administration of the statute." Glock, Inc. has not heard anything further.

57. Glock, Inc. sent a letter addressed to the Chief State's Attorney on September 8, 2026, requesting the State's position regarding whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible pistols," as defined by Conn. Gen. Stat. § 53-202(a)(4). Because of the October 1, 2026 effective date of the ban, Glock, Inc. requested a response to its September 8, 2026 letter by September 14, 2026.

58. This September 8, 2026 letter was copied to all Defendants named in this Complaint, as well as certain representatives of the Connecticut Office of the Attorney General and Connecticut State Police SLFU that attended the August 27, 2026 meeting.

59. As of the filing of this Complaint, the Office of the Connecticut Chief State's Attorney has not advised whether the State considers the Slimline, V Series, and Gen6 GLOCK pistols to fall within the definition of a "convertible pistol" pursuant to Conn. Gen. Stat. § 53-202(a)(4) such that the importation, advertisement, and sale of such pistols manufactured on or after October 1, 2026 will be banned.

60. Without written confirmation that the Slimline, V Series, and Gen6 GLOCK pistols do not fall within the definition of a "convertible pistol" pursuant to Conn. Gen. Stat. § 53-202(a)(4), the Connecticut firearms dealers who participate in the Glock Stocking Dealer program, as well as all other federal firearm licensees in Connecticut will be unlikely to continue purchasing any GLOCK pistols manufactured on or after October 1, 2026 because of the substantial criminal penalties associated with a potential violation. In addition, Glock, Inc. will lose revenue from the ban on sales of GLOCK pistols to consumers in Connecticut.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment
### 28 U.S.C. § 2201(a)

61. Glock, Inc. re-alleges and incorporates by reference the preceding paragraphs as though fully set out herein.

62. The Declaratory Judgment Act provides, in relevant part, that in a "case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

63. Based on the vague and ambiguous definition of a "convertible pistol" in Conn. Gen. Stat. § 53-202(a)(4), the Connecticut State Police SLFU's inability to determine whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4), and the lack of a response from the Office of the Connecticut Chief State's Attorney, there is an actual, substantial, and concrete case and controversy regarding whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible pistols" as defined by in Conn. Gen. Stat. § 53-202(a)(4).

64. Glock, Inc. therefore seeks a declaratory judgment that the Slimline, V Series, and Gen6 GLOCK pistols are not considered to be "convertible pistols" as defined in Conn. Gen. Stat. § 53-202(a)(4).

65. In the alternative, Glock, Inc. seeks a declaration that the "convertible pistol" ban is unconstitutional on the basis that it is void for vagueness in violation of the due process clause of the Fourteenth Amendment, bans firearms in common use for lawful purposes without any

historical support in violation of the Second and Fourteenth Amendment right to keep and bear arms, and infringes the right to free speech in violation of the First and Fourteenth Amendments.

66. Glock, Inc. seeks a declaratory judgment that the Slimline Models are not "convertible pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4) because they cannot "be readily altered by hand or with a common household tool so that the pistol can be readily converted into a machine gun by the installation or attachment of a pistol converter." This is because the smaller width of these models—including the short distance between the rear frame rails, the location of the connector, the size of the slide cover plate, and the lack of sufficient space adjacent to the firing pin in the slide—shields the cruciform trigger bar from interference by all known MCDs.

67. Glock, Inc. seeks a declaratory judgment that the V Series and Gen6 GLOCK pistols are not "convertible pistols" based on the exclusion set forth in Conn. Gen. Stat. § 53-202(a)(4)(B) for a "semiautomatic pistol with a cruciform trigger bar that has a tab or other piece of material molded to the pistol's frame that shields the cruciform trigger bar from interference by a pistol converter, unless the tab or other piece of material can be readily removed from the pistol's frame." This is because the hardened steel bracket molded into the rear frame rails included as part of the "triple block" constitutes a "tab or other piece of material molded to the pistol's frame that shields the cruciform trigger bar from interference by a pistol converter" and the bracket cannot "be readily removed from the pistol's frame." Moreover, the design of the V Series and Gen6 GLOCK pistols go further with additional blocking features incorporated into the slide, which include steel domes that protrude into the space where the leg of an MCD could interact with the cruciform trigger bar and a modified slide cover plate design that prevents all known MCDs from being installed.

## SECOND CLAIM FOR RELIEF

### Violation of U.S. Constitution, Fourteenth Amendment
### 42 U.S.C. § 1983

68. Glock, Inc. re-alleges and incorporates by reference the preceding paragraphs "1" through "60" as though fully set out herein.

69. In the alternative, Glock, Inc. seeks relief pursuant to 42 U.S.C. § 1983 on the basis that the ban on "convertible pistols" enacted pursuant to HB 5043 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment if it is interpreted to apply to the Slimline, V Series and Gen6 GLOCK pistols.

70. Section 1 of the Fourteenth Amendment states, in relevant part, that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV § 1.

71. Pursuant to the due process clause of the Fourteenth Amendment, a statute is void for vagueness if what it prohibits or requires is not clearly explained in the statute itself in a manner in which an ordinary citizen can understand.

72. The void for vagueness principle serves two important interests. First, it ensures that citizens can conform their conduct to what a statute requires or prohibits so that they do not violate it. Second, it prevents the arbitrary enforcement of a statute by officials who do not clearly understand what it requires or prohibits.

73. The strictest clarity requirements apply to the ban on "convertible pistols" because of the criminal penalties for violating it and because it implicates the right to keep and bear arms protected by the Second and Fourteenth Amendments, as well as the First Amendment relative to advertising legal products.

74. Three provisions in the "convertible pistol" ban render it void for vagueness in violation of the due process clause of the Fourteenth Amendment.

75. First, there is no definition of the meaning of the terms "readily altered" and "readily converted" in the phrase "<u>readily altered</u> by hand or with a common household tool so that the pistol can be <u>readily converted</u> into a machine gun by the installation or attachment of a pistol converter" as used in Conn. Gen. Stat. § 53-202(a)(4) (emphasis added).

76. This provision could be interpreted as being limited to the removal of the slide cover plate using a common household tool, such as a screwdriver, and installing one of the MCDs currently available as of September 2026. Such an interpretation would exclude the Slimline, V Series and Gen6 GLOCK pistols from the definition of a "convertible pistol."

77. This provision could also be very broadly interpreted to apply to the ability of a firearm design engineer, firearm manufacturer or an experienced gunsmith to make material modifications to the Slimline, V Series and Gen6 GLOCK pistols, including the use of an electric drill and/or rotary tool (both of which are defined as "common household tools") to remove steel and reshape the dimensions of the pistol, and then create a new version of a "pistol converter" that could be installed on such modified pistol.

78. Second, there is no definition of the meaning of the term "readily removed" in the phrase "tab or other piece of material molded to the pistol's frame that shields the cruciform trigger bar from interference by a pistol converter, unless the tab or other piece of material can be <u>readily removed</u> from the pistol's frame," as used in Conn. Gen. Stat. § 53-202(a)(4)(B) (emphasis added).

79. This provision could be interpreted as being limited to the removal of the plastic tab at the rear of the frame of the Gen5 GLOCK pistols using a common household tool, such as

a knife. Such an interpretation would exclude the Slimline, V Series and Gen6 GLOCK pistols from the definition of a "convertible pistol."

80. This provision could also be very broadly interpreted to apply to the ability of a firearm design engineer, firearm manufacturer or an experienced gunsmith who knows the location of the hardened steel bracket molded into the pistol's frame as part of the "triple block" to use a rotary tool to grind out the steel bracket.

81. Such a broad interpretation could result (depending on the interpretation of the terms "readily altered" and "readily converted" as used in Conn. Gen. Stat. § 53-202(a)(4)) in the V Series and Gen6 GLOCK pistols being considered banned "convertible pistols."

82. This broad interpretation would be despite the fact that none of the "pistol converters" available for criminals to acquire as of September 2026 would be capable of being installed in a pistol that has had the hardened steel bracket molded into its frame ground out by a rotary tool (which also causes irreversible damage to the pistol) because of the other two components of the "triple block" design.

83. Third, there is no definition of the term "advertises" in the phrase "<u>advertises</u>, sells, offers or exposes for sale any convertible pistol" as prohibited by Public Law 26-41 § 3.

84. This provision could be interpreted as being limited to the advertisement within the State of Connecticut of specific "convertible pistol(s)" for sale to persons in Connecticut in violation of Public Law 26-41 § 3.

85. This provision could also be very broadly interpreted to apply to Glock, Inc.'s website referring to the features of the Gen3, Gen4, and Gen5 pistols in general, which it still must manufacture, import and otherwise have available for sale to law enforcement and other government agencies that use such pistol models. Further, HB 5043's prohibition on the

importation of Gen5 and earlier model GLOCK pistols manufactured on or after October 1, 2026 prevents law enforcement agencies that issue such pistol models from receiving warranty replacements or otherwise acquiring new pistols from their approved model lists.

86. This provision could also be interpreted to make it illegal for Glock Stocking Dealers and other federal firearms licensees in Connecticut to display copies of the Glock Buyer's Guides, the Glock Annuals, or the Glock Instructions for Use Manuals on their counters.

87. The latter two interpretations would violate the First Amendment, but the potential for the "convertible pistol" ban to be interpreted in that manner confirms why it is unconstitutionally void for vagueness.

88. Because of the substantial criminal penalties for its alleged violation, persons in Connecticut, including Glock Stocking Dealers who have contracts with Glock, Inc. to purchase GLOCK pistols, may avoid engaging in legal, constitutionally protected conduct to avoid potentially violating HB 5043 because of its vague terms.

89. As the Connecticut State Police SLFU noted during the August 27, 2026 meeting, it has been receiving calls from federally licensed firearms dealers in Connecticut who are unable to determine whether Slimline, V Series, and Gen6 GLOCK pistols will be banned as "convertible pistols."

90. The Connecticut State Police SLFU indicated during the August 27, 2026 meeting that it does not know whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4).

91. The Connecticut State Police SLFU is responsible for oversight and regulation of firearm sale transactions and information for firearms dealers. The fact that it cannot determine whether the Slimline, V Series, and Gen6 GLOCK pistols are considered to be "convertible

pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4) demonstrates the potential for the arbitrary enforcement of the ban enacted as part of Public Law 26-14 by the law enforcement officers who will be responsible for the actual enforcement of such ban.

92. 42 U.S.C. § 1983 states, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

93. Defendants are required by Connecticut law to investigate and prosecute any person who knowingly imports into this state or knowingly advertises, sells, offers or exposes for sale any convertible pistol in violation of Public Law 26-14. Conn. Gen. Stat. §§ 29-7, 51-277(b), 51-286a(a).

94. Glock, Inc., is therefore entitled to declaratory and injunctive relief to prevent Defendants from enforcing the ban on the importation into Connecticut, and the ban on the advertisement, sale, offer or exposure for sale, of Slimline, V Series, and Gen6 GLOCK pistols because, to the extent they are considered to fall within the definition of "convertible pistols," the ban enacted pursuant to Public Law 26-14 is void for vagueness in violation of the due process clause of the Fourteenth Amendment.

## THIRD CLAIM FOR RELIEF

### Violation of U.S. Constitution, Second and Fourteenth Amendments 42 U.S.C. § 1983

95. Glock, Inc. re-alleges and incorporates by reference the preceding paragraphs "1" through "60" as though fully set out herein.

96. The Second Amendment, which is incorporated against the States pursuant to the Fourteenth Amendment, provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

97. GLOCK pistols, including those that could possibly be considered "convertible pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4) are "Arms" for purposes of the Second Amendment.

98. GLOCK pistols, including those that could possibly be considered "convertible pistols" as defined by Conn. Gen. Stat. § 53-202(a)(4) are in common use by law-abiding citizens for lawful purposes, including, but not limited to, self-defense, target shooting and hunting, and, in fact, are the most popular handgun owned by citizens and the most widely made handgun.

99. There is no historical tradition of banning legal, semi-automatic firearms, simply because they can be illegally converted into a machinegun or another type of firearm that is illegal to possess. In fact, prior to 2026, no such bans had ever been enacted.

100. The right to keep and bear arms protected by the Second Amendment protects the right to acquire firearms, including the right to manufacture and sell firearms.

101. By banning the importation into Connecticut, and the advertisement, sale, offer or exposure for sale, of Slimline, V Series, and Gen6 GLOCK pistols on the basis that they can be illegally converted to machineguns using already illegal MCDs without any historical support for such laws, HB 5043 violates the right to keep and bear arms protected by the Second and Fourteenth Amendments.

102. 42 U.S.C. § 1983 states, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

103. Defendants are required by Connecticut law to investigate and prosecute any person who knowingly imports into this State or knowingly advertises, sells, offers or exposes for sale any "convertible pistol" in violation of Public Law 26-14. Conn. Gen. Stat. §§ 29-7, 51-277(b), 51-286a(a).

104. Glock, Inc. is therefore entitled to declaratory and injunctive relief to prevent Defendants from enforcing the ban on the importation into Connecticut, and the ban on the advertisement, sale, offer or exposure for sale, of Slimline, V Series, and Gen6 GLOCK pistols (to the extent they are considered to fall within the definition of "convertible pistols"), in violation of the right to keep and bear arms protected by the Second and Fourteenth Amendments.

**FOURTH CLAIM FOR RELIEF**

**Violation of U.S. Constitution, Second and Fourteenth Amendments**
**42 U.S.C. § 1983**

105. Glock, Inc. re-alleges and incorporates by reference the preceding paragraphs "1" through "60" as though fully set out herein.

106. The Second Amendment, which is incorporated against the States pursuant to the Fourteenth Amendment, provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

107. All GLOCK pistols are "Arms" for purposes of the Second Amendment.

108. GLOCK pistols are in common use by law-abiding citizens for lawful purposes, including, but not limited to, self-defense, target shooting, and hunting, and, in fact, are the most popular handgun owned by citizens and the most widely made handgun.

109. All GLOCK pistols operate with a cruciform trigger bar.

110. There is no historical tradition of banning legal, semi-automatic firearms, simply because they can be illegally converted into a machinegun or another type of firearm that is illegal to possess. In fact, prior to 2026, no such bans had ever been enacted.

111. The right to keep and bear arms protected by the Second Amendment protects the right to acquire firearms, including the right to manufacture and sell firearms.

112. By banning the importation into Connecticut, and the advertisement, sale, offer or exposure for sale, of any semiautomatic pistol with a cruciform trigger bar, including GLOCK pistols, on the basis that they can be illegally converted to machineguns using already illegal MCDs without any historical support for such laws, HB 5043 violates the right to keep and bear arms protected by the Second and Fourteenth Amendments.

113. 42 U.S.C. § 1983 states, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

114. Defendants are required by Connecticut law to investigate and prosecute any person who knowingly imports into this State or knowingly advertises, sells, offers or exposes for sale any "convertible pistol" in violation of Public Law 26-14. Conn. Gen. Stat. §§ 29-7, 51-277(b), 51-286a(a).

115. Glock, Inc. is therefore entitled to declaratory and injunctive relief to prevent Defendants from enforcing the ban on the importation into Connecticut, and the ban on the advertisement, sale, offer or exposure for sale, of any semiautomatic pistol with a cruciform trigger bar, including GLOCK pistols, in violation of the right to keep and bear arms protected by the Second and Fourteenth Amendments.

## FIFTH CLAIM FOR RELIEF

### Violation of U.S. Constitution, First and Fourteenth Amendments
### 42 U.S.C. § 1983

116. Glock, Inc. re-alleges and incorporates by reference the preceding paragraphs "1" through "60" as though fully set out herein.

117. HB 5043 does not just regulate the importation of pistols with cruciform trigger bars into the State. It also regulates the "advertisement" and "offer or exposure for sale"—i.e., speech protected by the First Amendment.

118. HB 5043 authorizes the imposition of criminal liability for speech about legal products—products expressly protected by the Constitution, no less—even when that speech is truthful and not misleading. Indeed, the words "false," "misleading," and "deceptive" appear nowhere in the statute. Glock, Inc.'s publication of advertisements containing entirely accurate specifications of its legal products—caliber, magazine capacity, weight, retail price, etc.—could constitute a felony criminal offense under HB 5043 if they are visible to persons in Connecticut. And, any other "individual or firm, partnership, corporation, limited liability company, association or other similar entity" that publishes materials concerning GLOCK pistols—again, no matter how accurate its marketing materials are—could similarly be engaged in felony criminal conduct.

119. HB 5043's broad prohibition on the "advertisement, … offer or exposure for sale" of any semiautomatic pistol with a cruciform trigger bar based entirely upon one or more of the government Defendants' subjective determinations that a criminal can illegally convert them to machineguns using already illegal MCDs is exceptionally vague and could clearly be applied to prohibit constitutionally protected, non-misleading commercial speech.

120. That a product being marketed is dangerous does not render speech promoting it entitled to any less constitutional protection either. Truthful speech promoting a legal product is

protected by the First Amendment even if the product is known to have deleterious health effects. The mere fact that a product is considered dangerous by some does not transform the advertisement or "exposure for sale" of that product (i.e., speech) into a criminal act for which felony charges may be brought. And that is, of course, true *a fortiori* when it comes to promotion of products that not only are legal, but are protected by the Second Amendment.

121. Defendants cannot justify HB 5043's restrictions on speech by affirmatively proving that it is sufficiently tailored to achieve a sufficiently important state interest because laws that single out speech on the basis of its content or viewpoint are subject to the strictest of scrutiny, and are almost always unconstitutional.

122. HB 5043's sweeping prohibitions are both seriously underinclusive and seriously overinclusive in relation to any public safety interests that the government Defendants may assert. HB 5043 does nothing to police the conduct of criminals who illegally acquire and possess "pistol converters," unlawfully install illegal "pistol converters" in otherwise lawful pistols, or possess and use illegally converted pistols to commit crimes and endanger the public's health and safety. Nor does it regulate vast swaths of speech—e.g., action and horror films, video games, direct incitements to violence, and countless other forms of expression—that may actually encourage criminal gun violence, leaving it wildly underinclusive, even as a regulation of speech.

123. Conversely, by imposing felony criminal liability for any advertisements that could relate to an otherwise lawful semiautomatic pistol, even if it is nothing more than entirely truthful, non-misleading speech, HB 5043 is vastly overinclusive as well. HB 5043 thus has the inevitable effect of impairing vast swaths of fully protected expression.

124. By banning the advertisement, sale, offer or exposure for sale, of any semiautomatic pistol with a cruciform trigger bar, including GLOCK pistols, on the basis that they can be illegally

converted to machineguns using already illegal MCDs without any historical support for such laws, HB 5043 violates the right to freedom of speech protected by the First and Fourteenth Amendments.

125. 42 U.S.C. § 1983 states, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

126. Defendants are required by Connecticut law to investigate and prosecute any person who knowingly advertises, sells, offers or exposes for sale any "convertible pistol" in violation of Public Law 26-14. Conn. Gen. Stat. §§ 29-7, 51-277(b), 51-286a(a).

127. Glock, Inc. is therefore entitled to declaratory and injunctive relief to prevent Defendants from enforcing the ban on the advertisement, sale, offer or exposure for sale, of any semiautomatic pistol with a cruciform trigger bar, including GLOCK pistols, in violation of the right to freedom of speech protected by the First and Fourteenth Amendments.

**PRAYER FOR RELIEF**

Glock, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants and provide the following relief:

1. an order declaring that the Slimline, V Series, and Gen6 GLOCK pistols do not fall within the definition of a "convertible pistol" pursuant to Conn. Gen. Stat. § 53-202(a)(4) and may continue to be lawfully imported into Connecticut, advertised, sold, and offered or exposed for sale in Connecticut on and after October 1, 2026;

2. an order declaring that Public Law 26-14 is unconstitutional on the basis that it is void for vagueness in violation of the due process clause of the Fourteenth Amendment, violates

the right to keep and bear arms protected by the Second and Fourteenth Amendments, and the right to free speech protected by the First and Fourteenth Amendments, and an order enjoining Defendants without bond from implementing and enforcing the ban on the importation into Connecticut, and the ban on the advertisement, sale, offer or exposure for sale, of semi-automatic pistols with cruciform trigger bars, including GLOCK pistols;

3. an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable statute or authority; and

4. any further relief the Court deems just and appropriate.

Dated: September 21, 2026

**PLAINTIFF**
**GLOCK, INC.**

By: *<u>/s/ Christopher Renzulli</u>*
Christopher Renzulli (CT24597)
Peter V. Malfa (CT30903)
Scott C. Allan (CT24143)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700
Email: crenzulli@renzullilaw.com
pmalfa@renzullilaw.com
sallan@renzullilaw.com